United States District Court
Eastern District of New York

-----------------------------------X

USA,

Plaintiff,

**Memorandum & Order**

- against -

15-cr-204-KAM-3

Gregorio Gigliotti,

Defendant.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

Defendant Gregorio Gigliotti ("Gigliotti"), who is currently serving an 18-year prison sentence for a cocaine importation scheme and firearms possession moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 373, the "Mot." or "Motion".) For the reasons stated below, Mr. Gigliotti's Motion is GRANTED, and Mr. Gigliotti's sentence is reduced to time served plus no more than 21 days[1] to facilitate an orderly reentry.

## BACKGROUND

### I. Factual Background

On April 22, 2015, a grand jury in the Eastern District of New York returned an indictment charging Mr. Gigliotti and two co-

---

[1] For the avoidance of any doubt, Mr. Gigliotti's sentence is reduced to time served plus no more than 21 days such that he is released by September 16, 2026.

defendants. (ECF No. 45.) On May 6, 2015, the grand jury returned a superseding six count indictment against Mr. Gigliotti and his co-defendants. (ECF No. 51.) On May 26, 2016, the grand jury returned a second superseding eight-count indictment against Mr. Gigliotti and his co-defendants. (ECF No. 154.) Mr. Gigliotti was indicted on Counts One through Five of conspiracy to import cocaine, importation of cocaine, conspiracy to possess cocaine with intent to distribute, and attempted possession of cocaine pursuant to, *inter alia*, 21 U.S.C. §§ 841(b)(1)(A)(ii)(II), 846, 952(a), 960(a)(1), (b)(1)(B)(ii). (*Id.* 1-4.) Count Six charged Mr. Gigliotti with unlawful use and possession of a firearm in furtherance of Counts One through Five in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (2). (*Id.* at 4.) Count Seven charged Mr. Gigliotti with possession of a defaced firearm in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B). (*Id.* at 4-5.) Mr. Gigliotti was not charged with Count Eight. (*See id* at 5.)

The charges arose from Mr. Gigliotti's role in a cocaine-importation scheme with his wife, Eleonora Gigliotti ("Ms. Gigliotti"), and their son, Angelo Gigliotti. Between September 2014 and March 2015 alone, the Gigliottis used their businesses, including a restaurant named Cucino Amodo Mio, and import/export companies, to import to the United States at least 55 kilograms of cocaine from Costa Rica. The drug was typically hidden in packages containing food for the family's restaurant.

Following a two-week trial, on July 22, 2016, a jury convicted Mr. Gigliotti of Counts One through Seven. (ECF No. 200.) On April 18, 2017, the Honorable Raymond J. Dearie[2] sentenced Mr. Gigliotti to a total of eighteen (18) years as follows: thirteen years on Count One to run concurrently to Counts Two through Five and Count Seven; sixty (60) months on Count Six, to run consecutively to Counts One through Five and Count Seven; and five years of supervised release. (ECF Nos. 246, 247.)

On April 22, 2021, the Second Circuit affirmed Mr. Gigliotti's judgment of conviction. (ECF No. 332.) Mr. Gigliotti subsequently filed a petition to vacate his sentence under 28 U.S.C § 2255, which was denied. *See United States v. Gigliotti*, No. 15-cr-204 (RJD), 2023 WL 4532210, at *1 (E.D.N.Y. July 13, 2023).

Mr. Gigliotti is presently incarcerated at FCI Fort Dix, a low-security facility in Southern New Jersey. (Mot. at 3.) He has been in custody for over 11 years (11 years, 5 months, 15 days as of August 26, 2026) since his arrest on March 11, 2015. (*See id.*) Mr. Gigliotti is due to be released on August 21, 2030.[3] *See*

---

[2] This case was later re-assigned to the Honorable Judge Kiyo A. Matsumoto.

[3] There is a discrepancy between the current BOP release date on the BOP inmate database and Mr. Gigliotti's asserted release date. Mr. Gigliotti states that the BOP calculates a projected release date, including all good conduct time credits, of July 11, 2030, and estimates that Mr. Gigliotti will be eligible "to be placed into pre-release custody . . . up to 365 days prior to his projected

https://www.bop.gov/inmateloc (last visited August 26, 2026).

## II. Compassionate Release Procedural Background

Mr. Gigliotti's co-defendants, Ms. Gigliotti and Angelo Gigliotti, were both granted compassionate release and sentence reductions. On April 21, 2020, the Honorable Raymond J. Dearie granted Ms. Gigliotti's motion for compassionate release because she was nearing the end of her 84-month custodial term,[4] was at heightened risk for COVID-19, and because there would be "no danger if [Ms. Gigliotti was] released to the community." (ECF No. 324.)

On August 18, 2023, the Judge Dearie granted Mr. Gigliotti's son and co-defendant, Angelo Gigliotti, a reduction in sentence from 20-years to 10-years. *United States v. Gigliotti*, 687 F. Supp. 3d 353, 357 (E.D.N.Y. 2023). Angelo Gigliotti had been subject to a 20-year mandatory minimum based on a prior 2006 conviction for a marijuana distribution conspiracy. *Id.* at 355.[5] Congress passed the First Step Act eighteen months later which lowered the applicable mandatory minimum applicable to Angelo Gigliotti to 15 years. *Id.* Judge Dearie granted the sentencing

---

release date." (Mot. at 3.)

[4] Ms. Gigliotti's custodial term was due to end on April 20, 2021. (ECF No. 321 at 1). Ms. Gigliotti had also been approved to be released to a half-way house in October 2020. (*Id.*)

[5] Angelo Gigliotti received and served a five-year sentence in the marijuana distribution conspiracy where agents recovered more than 100 kilograms of marijuana. *Id.*

reduction based on the subsequent lowering of the applicable statutory minimum and the fact that Judge Dearie, at sentencing stated multiple times that he felt the mandatory 20-year sentence to be excessive but did not have discretion to impose a lower sentence. *Id.* at 355-57. Judge Dearie thus granted a sentencing reduction to 10 years, "the sentence he believed was appropriate initially." *Id.* at 357.

On August 19, 2024, Mr. Gigliotti submitted a written request to the unit team staff in Housing Unit 5811 for compassionate release. Mr. Gigliotti represents that the request should have then been relayed to the warden of FCI Fort Dix. (Mot. at 2.) An electronic request to staff was submitted to Mr. Charles Pavlov, Associate Warden (Programs). (*Id.*) After failing to receive a response after the thirty-day review period, Mr. Gigliotti filed his first *pro se* motion for compassionate release on October 30, 2024. (*Id.*) On February 23, 2025, the Government opposed the Motion. (ECF No. 377, the "Opp.".) On April 23, 2025, Mr. Gigliotti filed his Reply. (ECF No. 382, the "Rep.".) On March 16, 2026, the Court ordered the Government to file under the seal Mr. Gigliotti's updated medical records, which the Government filed on March 18, 2026. (ECF No. 383, the "Medical Records.")

**LEGAL STANDARD**

18 U.S.C. § 3582(c)(1)(A) creates an exception to the general rule that a federal district court may not modify a term of

imprisonment after it has been imposed. Four requirements must be satisfied before a court may modify a defendant's sentence pursuant to § 3582(c)(1)(A): (1) the defendant must exhaust administrative remedies by requesting compassionate release from prison authorities, or the Government must waive administrative exhaustion; (2) the defendant must demonstrate "extraordinary and compelling" reasons that warrant a sentence reduction; (3) the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (4) the court must find that a reduction is consistent with U.S. Sentencing Guidelines ("U.S.S.G.") § 1B1.13. *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (citing *United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)); *United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020) (noting inapplicability of prior version of U.S.S.G. § 1B1.13); *United States v. Saez*, No. 16-cr-317 (PAE), 2024 WL 303847, at *3-4 (S.D.N.Y. Jan. 26, 2024) (holding amended U.S.S.G. § 1B1.13 "controls a court's analysis of a . . . petition for compassionate release"); *United States v. Messina*, No. 11-cr-31 (KAM), 2024 WL 2853119, at *3 (E.D.N.Y. June 4, 2024) (citing *Saez*, 2024 WL 303847, at *3) (same). A court should reduce a defendant's sentence only after determining that "the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2).

**DISCUSSION**

## I. Exhaustion

A defendant may move for compassionate release after the earlier of (1) exhausting all administrative rights to appeal a failure by the Bureau of Prisons (the "BOP"), to file a motion on behalf of the defendant or (2) the lapse of thirty days from the receipt of any such request by the warden. 18 U.S.C. § 3582(c)(1)(A). This exhaustion requirement is not jurisdictional, and it may be waived by the government. *See Saladino*, 7 F.4th at 123 (citation modified).

Mr. Gigliotti represents that on August 19, 2024, he submitted his compassionate release request to the FCI Fort Dix warden and associate warden in writing and electronically. (Mot. at 2.) Mr. Gigliotti represents that he has not received any response from the warden. (*Id.*) Although the Court has been unable to identify "the appendix" Mr. Gigliotti represents he attached the request documents in, (*see id.*), the Government has forfeited any argument that the exhaustion requirement is not satisfied because its opposition focuses exclusively on the other requirements for granting a compassionate release motion. (Opp. 5-9.) Accordingly, the Court "is now free to consider the merits of [Mr. Gigliotti's] motion." *Saladino*, 7 F.4th at 123.

## II. Extraordinary and Compelling Reasons Warrant a Sentence Reduction

### A. Standard

U.S.S.G. § 1B1.13(b) enumerates six circumstances that, when considered either individually or in combination, a court may find amount to extraordinary and compelling reasons. Relevant to the instant motion are the provisions concerning medical circumstances and the age of a defendant. Extraordinary and compelling reasons may exist if the defendant is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of their sentence, whichever is less." *Id.* § 1B1.13(b)(2). The guidance includes a "catch-all" provision allowing a court to consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of § 1B1.13(b)], are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5).

To determine what constitute "extraordinary and compelling circumstances," "a district court has discretion to consider 'the full slate' of arguments that defendants present to support a sentence reduction, 'whether in isolation or combination.'" *United States v. Monteleone*, No. 92-CR-351 (ARR), 2023 WL 2857559, at *2 (E.D.N.Y. Apr. 10, 2023) (quoting *United States v. Brooker*,

976 F.3d 228, 237-38 (2d Cir. 2020)).

In addition to guiding courts in determining whether extraordinary and compelling reasons warrant a sentence reduction, § 1B1.13 also provides that a court should reduce a defendant's sentence only after determining that "the defendant is not a danger to the safety of any other person or to the community," *id.* § 1B1.13(a)(2).

**B. Analysis**

Mr. Gigliotti argues that his age and medical conditions, his co-defendants' releases, the unusually harsh prison conditions at FCI, and that he should have been released under the CARES Act warrant a sentence reduction. (*See generally* Mot.) The Government argues that no sentence reduction is warranted because prior courts have found that similar or worse medical conditions did not constitute "extraordinary and compelling" circumstances; the BOP has provided consistent and ongoing treatment of Mr. Gigliotti's health conditions; and prison conditions and any prior available relief under the now-expired CARES Act are not "extraordinary and compelling" circumstances. (Opp. at 5-8.) The Court finds that the combination of Mr. Gigliotti's age, health conditions, the sentences his co-defendants served, and his clean disciplinary record, are "extraordinary and compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Monteleone*, No. 92-CR-351 (ARR), 2023 WL 2857559, at *4

(E.D.N.Y. Apr. 10, 2023) (finding extraordinary and compelling reasons based on prisoner's age, medical conditions and clean, recent disciplinary record).

**1. Age and Medical Condition**

First, if, as here, the defendant (1) is at least 65 years old, (2) has served at least 10 years of his term of imprisonment, and (3) "is experiencing a serious deterioration in physical or mental health because of the aging process," extraordinary and compelling circumstances exist. U.S.S.G. § 1B1.13(b)(2). Mr. Gigliotti is 70 years old, has served over 11 years of his sentence, and satisfies the first two criteria. (Mot. at 3, 13.)

Under § 1B1.13(b)(2), "a defendant need not have lost all ability to provide self-care or be suffering from a terminal illness to qualify for relief under [§ 1B1.13(b)(2)]," which imposes a lower standard regarding the severity of defendant's medical conditions. *See United States v. Garcia*, 758 F. Supp. 3d 47, 55 (E.D.N.Y. 2024) ("The contrast between § 1B1.13(b)(1) and (b)(2) 'reveals that a defendant need not have lost all ability to provide self-care or be suffering from a terminal illness to qualify for relief under [§ 1B1.13(b)(2)].'" (*quoting United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020))); *United States v. Hansen*, No. 07-cr-520 (KAM), 2020 WL 1703672, at *7 (E.D.N.Y. Apr. 8, 2020) (citing *Ebbers*, 432 F. Supp. 3d at 428)

(same).[6] "Other courts in this circuit have held that certain medical conditions—considered together—are 'more than enough to satisfy'" § 1B1.13(b)(2). *United States v. Castillo*, No. 03-CR-979 (KMW), 2026 WL 444695, at *2 (S.D.N.Y. Feb. 17, 2026) (collecting cases) (quoting *United States v. Carter*, No. 13-CR-900, 2025 WL 1865278, at *1 (S.D.N.Y. July 7, 2025) and finding that defendant's "combination of several serious medical conditions, including having had a heart attack, chronic kidney disease, prostate disorder, prediabetes, hypertension, hyperlipidemia, and problems with [] vision" warranted release).

Mr. Gigliotti health conditions can be grouped into two general categories: (i) his history of strokes, and (ii) cardiovascular disease and other chronic health conditions. (Mot. at 4-5.) Although Mr. Gigliotti has a prior history of three strokes, one before he commenced his custodial term, and two stokes while in custody, it appears that he has recovered completely, including from Bell's Palsy, except for a non-progressive numbness

---

[6] The Guidelines outline two potential circumstances under which medical conditions may constitute "extraordinary and compelling reasons" to warrant relief: U.S.S.G. § 1B1.13(b)(1) and § 1B1.13(b)(2). Section 1B1.13(b)(1) does not include an age requirement and requires a higher level of health deterioration to constitute "extraordinary and compelling reasons" than the standard required for the severity of a defendant's medical conditions to qualify for relief under § 1B1.13(b)(2). *See Garcia*, 758 F. Supp. 3d at 55.

in his left foot and diminished hearing in his left ear. (*See* ECF No. 226, the "PSR" ¶ 73; Mot. at 2; Medical Records at 10, 25.) Accordingly, the Court will mainly focus on Mr. Gigliotti's cardiovascular conditions for the purposes of this Motion.

Before serving his custodial sentence, Mr. Gigliotti had two stents placed in the arteries of his heart in August of 2017. (Medical Records at 1.) Mr. Gigliotti also has an aortic aneurysm in one of the main arteries from his heart which places him at heightened risk of developing a life-ending aneurysm. (*Id.* at 1; Mot. at 4.) Mr. Gigliotti's medical records appear to report two aneurysms located in two different sections of the heart: both a descending thoracic aortic aneurysm and an ascending thoracic aortic aneurysm. (Medical Records at 1.) An April 18, 2019 CT chest scan showed a 4.3 cm descending thoracic aortic aneurysm. (*Id.*) A May 17, 2021 CT chest scan showed an ascending thoracic aortic aneurysm also measuring 4.3 cm. (*Id.*) A January 24, 2024 CT chest scan reported that the ascending thoracic aortic aneurysm had enlarged to 4.4 cm. (*Id.*)

Moreover, although Mr. Gigliotti is receiving medication to manage his diabetes, hyperlipidemia, and hypertension, these conditions are comorbidities which can worsen coronary artery disease.[7] (*See* Mot. at 4; Medical Records at 5-6.) Mr. Gigliotti

---

[7] Defendant also contends that he suffers from sciatic and

also has glaucoma in both eyes, and diminished hearing in his left ear, which results in difficulty listening to overhead announcements and doing routine conversations. (Medical Records at 21, 26.) Mr. Gigliotti thus suffers from a combination of serious age-related medical conditions.

The Government's argument that "extraordinary and compelling circumstances" do not exist here because the BOP is managing Mr. Gigliotti's medical conditions "misapprehends the nature of the inquiry" because U.S.S.G. § 1B1.13(b)(2) "looks at whether [Mr. Gigliotti] has articulated 'a trend of seriously deteriorating health related to the aging process,'" and not BOP's management. *Castillo*, 2026 WL 444695, at *3 (quoting *United States v. Hagen*, 2024 WL 3371044 (W.D.N.C. July 10, 2024)).

Because Mr. Gigliotti has several serious medical conditions including two growing aortic aneurysms and various comorbidities that create a risk of life-threatening aortic dissection and aortic rupture, which "would require a high-risk surgery to repair," *United States v. Monteleone*, No. 92-CR-351 (ARR), 2023 WL 2857559, at *4 (E.D.N.Y. Apr. 10, 2023), the Court finds that Mr. Gigliotti "is experiencing serious and deteriorating age-related medical conditions that satisfy § 1B1.13(b)(2)." *Castillo*, 2026 WL 444695,

---

neuralgia but there is no indication in the medical records before this Court of such conditions. (*See generally* Medical Records.)

at *3; *see also United States v. Gonzalez*, No. 11 CR. 718 (PGG), 2021 WL 535809, at *3 (S.D.N.Y. Feb. 11, 2021) (finding "extraordinary and compelling reasons" where defendant had Type 2 diabetes mellitus, asymptomatic aortic root aneurysm (thoracic), and high blood pressure/hypertension, and also obesity and mild emphysema).

**2. Other Circumstances**

The Court also finds that the sentencing disparity that now exists between Mr. Gigliotti (18-year sentence) and his co-defendants Angelo Gigliotti (10-year sentence) and Ms. Gigliotti (7-year sentence) following Judge Dearie's granting of compassionate release relief to Ms. Gigliotti and Angelo Gigliotti contribute to a finding of extraordinary and compelling circumstances warranting relief. *See United States v. Russo*, 643 F. Supp. 3d 325, 338 (E.D.N.Y. 2022) (considering co-defendants' sentences and concluding that sentencing disparities with co-defendants warranted a sentencing reduction); *United States v. Vasquez*, 735 F. Supp. 3d 124, 132 (E.D.N.Y. 2024) (collecting cases and considering co-defendants' reduced sentences and the defendant's sentence in finding extraordinary and compelling circumstances).

In granting a sentencing reduction from Angelo Gigliotti's initial mandatory minimum sentence of 20-years to 10-years, Judge Dearie stated that he was now imposing "the sentence [he] believed

was appropriate initially." *United States v. Gigliotti*, 687 F. Supp. 3d 353, 357 (E.D.N.Y. 2023). Like Mr. Gigliotti, Angelo Gigliotti was convicted on Counts One through Five of conspiracy to import cocaine, importation of cocaine, conspiracy to possess cocaine with intent to distribute, and attempted possession of cocaine. (ECF No. 288.) The Court recognizes that a higher sentence for Mr. Gigliotti compared to his son is appropriate because Mr. Gigliotti was the organizer and/or leader of cocaine distribution conspiracy, (PSR ¶ 38), and was also convicted of Count Six, the unlawful use and possession of a firearm in furtherance of Counts One through Five in violation of 18 U.S.C. §§ 924(c)(1)(A)(i),(2), and Count Seven, possession of a defaced firearm in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B). (ECF No. 247); *see also United States v. Ebbers*, 458 F.3d 110, 129 (2d Cir. 2006) ("varying degrees of culpability" may be "a reasonable explanation of" different sentences). However, under these specific circumstances, including Mr. Gigliotti's age, medical condition, and the 10-year sentence Judge Dearie thought was appropriate for Angelo Gigliotti's conviction on Counts One through Five, the Court finds the large disparity between Angelo Gigliotti and Mr. Gigliotti to be too great here, and contributes to "extraordinary and compelling circumstances" that warrant a sentencing reduction.

The Court also finds that Mr. Gigliotti's spotless

disciplinary record, which the Government does not dispute, also contributes to its finding of extraordinary and compelling circumstances here. (*See* Mot. at 10; Opp. at 8.) Because Mr. Gigliotti was not convicted of a crime of violence,[8] and maintains a spotless disciplinary record at a low-security facility, and because there is no evidence in the record to suggest that Mr. Gigliotti has made any threats of physical violence while incarcerated, the Court sees no reason to conclude that Mr. Gigliotti is "a danger to the safety of any other person or to the community," § 1B1.13(a)(2). *See United States v. Vasquez*, 735 F. Supp. 3d 124, 134 (E.D.N.Y. 2024) (concluding defendant was not a danger the community although defendant's "crimes of conviction were violent," because of defendant's rehabilitation and the fact that "there is no evidence in the record to suggest defendant remained violent or has made any threats of physical violence while incarcerated").

Accordingly, the Court finds that Mr. Gigliotti's age and medical conditions, the sentences his co-defendants served, and Mr. Gigliotti's clean disciplinary record, are "extraordinary and

---

[8] Mr. Gigliotti was not convicted on any crime of violence and Judge Dearie at sentencing did not include a two-point enhancement for the threat or the use of threats in connection with the drug trafficking operation but admonished that Mr. Gigliotti's "references to violence" in connection with the operation were "unacceptable." (ECF No. 280, "Sent'g Tr." at 14, 19.)

compelling reasons warrant[ing]" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i).[9]

**III. Section 3553(a) Factors**

The Court must also consider the 18 U.S.C. § 3553(a) factors when evaluating a motion pursuant to § 3582(c)(1)(A) and determine "whether the relevant factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." *Messina*, 2024 WL 2853119, at *3 (quoting *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812 (S.D.N.Y. 2020)).

The Court concludes that the Section 3553(a) factors support a sentence reduction. There were and still are justifications for a substantial sentence, especially the seriousness of Mr. Gigliotti's criminal conduct. Mr. Gigliotti's good conduct while in prison, age, and his deteriorating health, however, support a finding that Mr. Gigliotti is unlikely to be at risk of recidivism

[9] For the avoidance of doubt, in granting relief, the Court does not accept the totality of the arguments on "extraordinary and compelling" reasons presented in Mr. Gigliotti's Motion. Mr. Gigliotti also argues that his conditions of confinement, incarceration during the COVID-19, and FCI Fort Dix's alleged delayed processing of his release under the CARES Act contribute to extraordinary and compelling circumstances, but the Court does not rely on such circumstances in finding extraordinary and compelling circumstances. (*See* Mot. 8-10.) The Court is concerned by Mr. Gigliotti's allegations regarding the slow-walking of his release under the CARES Act at FCI Fort Dix but need not rely on such allegations in granting a sentencing reduction here.

or a danger to the community. *See* § 3553(a)(2)(C). Mr. Gigliotti has served over 11 years in prison, which provides an adequate general deterrent for others who may engage in drug trafficking or engage in the unlawful possession of firearms. *See* § 3553(a)(2)(B). Specific deterrence is unnecessary because of Mr. Gigliotti's deteriorating health and rehabilitation. *See id.*

In considering whether Mr. Gigliotti is provided "just punishment," § 3553(a)(2)(B), the Court finds that Mr. Gigliotti's "considerably harsher" conditions of confinement "as a result of the pandemic," especially given that Mr. Gigliotti's health conditions placed him at increased risk for serious illness as a result of COVID-19, weigh in favor of a sentencing reduction. *United States v. Carter*, No. 13-CR-900 (JMF), 2025 WL 1865278, at *2 (S.D.N.Y. July 7, 2025); *see also United States v. Fiseku*, No. 15-CR-384-1 (PAE), 2020 WL 7695708, at *6 (S.D.N.Y. Dec. 28, 2020) (observing that "time served during the pandemic is harder than during normal times"); (Mot. at 8-9.)

The need for the most effective medical care also weighs in favor of allowing Mr. Gigliotti to seek medical treatment outside the confines of the BOP. *See* § 3553(a)(2)(D); *Carter*, 2025 WL 1865278, at *2 (granting a motion for compassionate based in part on the "need to provide medical care in the most effective manner . . . outside the confines of the Bureau of Prisons").

In response to Mr. Gigliotti's representation that he is "not

the man who stood before this court for sentencing in 2017" (Mot. at 11), the Government argues that Mr. Gigliotti "has not expressed remorse for his actions." (Opp. at 8.) However, at Mr. Gigliotti's sentencing Mr. Gigliotti did demonstrate acceptance of responsibility and stated that he had not wanted to proceed to trial, but that his plea was contingent on his son, Angelo Gigliotti, reaching a deal with prosecutors. (*See* Sent'g Tr. at 16-17 ("I understand I made a mistake in my life. I am willing to accept my responsibility for my action and the decision I made that [] while on trial I would raise no defense for the drugs, only for the guns related to the . . . drugs . . . it was not my choice to go to trial . . . I know the sentence you are going to impose will be a long one. I accept it though. I only ask you, Judge, that when you sentence my wife and my son so you show them mercy. My wife is not well. She need to be home with family that can take care of her. My son is a working family man who have child to support. But they are only involved in this mess because of me. Please show them mercy and don't make them pay the price for my mistake.").)

The Court thus concludes "the relevant [Section 3553(a)] factors" do not "outweigh the 'extraordinary and compelling reasons' warranting compassionate release" or "undermine the goals of the original sentence." *Messina*, 2024 WL 2853119, at *3

## CONCLUSION

For the reasons set forth above, the Court GRANTS Mr. Gigliotti's motion for a reduced sentence to time served plus no more than 21 days to facilitate an orderly reentry, establish a release plan, permit the Government to seek a stay in the event that it intends to appeal, and permit the Government to make any necessary or appropriate victim notifications. The other aspects of Mr. Gigliotti's sentence, including the length and conditions of supervised release remain in effect.

The Government is respectfully directed to forward a copy of this decision to the Warden at FCI Fort Dix forthwith. The Clerk of Court is respectfully directed to mail a copy of this decision to Mr. Gigliotti.

**So ordered.**

Dated: August 26, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York